# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2018 CA 1391

# FLORIDA GAS TRANSMISSION COMPANY, LLC

## VERSUS

# TEXAS BRINE COMPANY, LLC

**Judgment Rendered:** **MAY 0 3 2021**

Appealed from the
23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Docket Number 34,316

**Honorable Thomas J. Kliebert, Jr., Judge Presiding**

****************

| | |
|---|---|
| Martin A. Stern<br>Leigh Ann Schell<br>Raymond P. Ward<br>Sara Valentine<br>Alexandra Roselli<br>New Orleans, Louisiana | Attorneys for Appellants/Appellees/Defendants<br>Occidental Chemical Corporation,<br>Occidental Petroleum Corporation, and<br>Oxy USA, Inc. |
| Kathy Patrick<br>Laura Kissel Cassidy<br>Samuel W. Cruse, III<br>Houston, Texas | |
| Roy C. Cheatwood<br>Kent A. Lambert<br>Adam B. Zuckerman<br>Colleen C. Jarrott<br>Matthew S. Chester<br>Matthew C. Juneau<br>New Orleans, Louisiana | Attorneys for Appellant/Appellee/Defendant<br>Legacy Vulcan, LLC |
| Tony M. Clayton<br>Port Allen, Louisiana | |
| Leopold Z. Sher<br>James M. Garner<br>Peter L. Hilbert, Jr.<br>Christopher T. Chocheles<br>Jeffrey D. Kessler<br>David A. Freedman | Attorneys for Appellant/Defendant<br>Texas Brine Company, LLC |

Melissa R. Harris
Laurie A. Dearman
New Orleans, Louisiana

Robert Ryland Percy, III
Gonzales, Louisiana

Eric J. Mayer
Houston, Texas

Travis J. Turner
Gonzales, Louisiana

Dane S. Ciolino
Metairie, Louisiana

Leopold Z. Sher                     Attorneys for Appellant/Defendant
James M. Garner                     United Brine Services Company, LLC
Peter L. Hilbert, Jr.
Christopher T. Chocheles
Jeffrey D. Kessler
New Orleans, Louisiana

Robert Ryland Percy, III
Gonzales, Louisiana

Theodore L. Jones
Baton Rouge, Louisiana

Eric J. Mayer
Houston, Texas

Travis J. Turner
Gonzales, Louisiana

Leopold Z. Sher                     Attorneys for Appellee/Defendant
James M. Garner                     Texas Brine Company, LLC
Peter L. Hilbert, Jr.
Christopher T. Chocheles
Jeffrey D. Kessler
David A. Freedman
Melissa R. Harris
Laurie A. Dearman
New Orleans, Louisiana

Robert Ryland Percy, III
Gonzales, Louisiana

James E. Kuhn
Ponchatoula, Louisiana

Eric J. Mayer
Houston, Texas

2

Travis J. Turner
Gonzales, Louisiana

Dane S. Ciolino
Metairie, Louisiana

Theodore L. Jones
Baton Rouge, Louisiana

Jason Cerise                        Counsel for Appellee/Defendant
Jacob Weixler                       Adams Resources Exploration
New Orleans, Louisiana

Joseph L. Shea, Jr.                 Counsel for Appellee/Defendant
Katherine Smith Baker               Reliance Petroleum Corporation
Ashley G. Gable
Joshua S. Chevallier
Shreveport, Louisiana

Frank H. Spruiell, Jr.              Counsel for Appellee/Defendant
Reid A. Jones                       Sol Kirschner
Seth M. Moyers
Anna W. O'Neal
Shreveport, Louisiana

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**BEFORE: GUIDRY, THERIOT, AND BURRIS,[1] JJ.**

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

3

**BURRIS, J.**

Legacy Vulcan, LLC, Occidental Chemical Corporation (Oxy), Occidental Petroleum Corporation (Oxy Petro), Oxy USA, Inc., and Texas Brine Company, LLC appeal a judgment determining causation, liability, and apportionment of fault for the formation of a sinkhole and the damage it caused in Assumption Parish, Louisiana. United Brine Services Company, LLC (UBS) filed an answer in response to the appeals filed by Legacy Vulcan, Oxy, Oxy Petro, and Oxy USA. In response to UBS's answer, Oxy, Oxy Petro, and Oxy USA filed an exception of res judicata with this court.

For the following reasons, we reverse in part, amend in part, and affirm in part. We deny the exception of res judicata filed by Oxy, Oxy Petro, and Oxy USA and deny the relief sought in UBS's answer to the appeals.

## FACTS AND PROCEDURAL HISTORY

This suit is one of many arising from a sinkhole that appeared near Bayou Corne in Assumption Parish in August 2012. The plaintiff in this suit, Florida Gas Transmission Company, LLC, owns and operates two pipelines in the vicinity of the property affected by the sinkhole. In its original petition for damages, Florida Gas sought to recover damages for its inoperable pipelines from Texas Brine. Florida Gas alleged that Texas Brine negligently operated the Oxy Geismar No. 3 Well (OG3), which collapsed and created the sinkhole.

Texas Brine responded by filing incidental demands asserting tort and contract claims against various parties, including Legacy Vulcan and Oxy. Through innumerable amended and supplemental pleadings filed by numerous parties, additional litigants were added to the suit for their purported roles in causing the sinkhole, including Oxy Petro (Oxy's parent company), Oxy USA, and UBS, a wholly owned subsidiary of Texas Brine.

Two additional suits were filed against Texas Brine by affected pipeline companies, namely, **Pontchartrain Natural Gas System v. Texas Brine**

4

**Company, LLC**, 23rd Judicial District Court, docket no: 34,265 and **Crosstex Energy Services, LP, Crosstex LIG, LLC, and Crosstex Processing Services, LLC v. Texas Brine Company, LLC, Zurich American Insurance Company & American Guarantee and Liability Insurance Company**, 23rd Judicial District Court, docket no: 34,202. Although the claims asserted in these three pipeline cases are similar, the parties resisted consolidation, except for purposes of trial.[2] The district court issued a trial order in September 2016, outlining four phases of trial. The Phase 1 liability trial for the three pipeline cases was held in the fall of 2017 for the purpose of determining what caused the sinkhole and which parties, if any, were at fault under any theory of law. All other issues were reserved for trial in Phases 2 through 4.

Judgment on the Phase 1 liability trial was issued on December 21, 2017, finding Oxy, Texas Brine, and Legacy Vulcan liable for the formation of the sinkhole. Fault was apportioned as follows: 50% to Oxy, 35% to Texas Brine, and 15% to Legacy Vulcan. In its written reasons, the district court concluded that the sinkhole was caused, in various degrees, by three factors: (1) the cavern's proximity to the edge of the salt dome resulting in an unreasonably thin cavern wall and an eventual brine leak, (2) the substantial depressurization of the OG3 cavern caused by brine leaking from the cavern into the AH-1 reservoir (associated with a neighboring oil and gas well), and (3) the timing of the plugging and abandoning of the OG3.

Several parties then filed motions for new trial, primarily challenging the apportionment of fault and the language of the judgment. After a contradictory hearing on the motions and taking the matter under advisement, the motions for new trial were granted in part and denied in part. In a judgment signed on April 18, 2018, the district court reapportioned fault as follows: 40% to Oxy, 5% to Oxy

---

[2] Appeals were filed in each matter following the Phase 1 liability trial: **Pontchartrain,** 2018 CA 1249, **Florida Gas,** 2018 CA 1391, and **Crosstex,** 2018 CA 1425.

Petro, 5% to OXY USA, 25% to Texas Brine, 10% to UBS, and 15% to Legacy Vulcan. From this judgment, Legacy Vulcan, Oxy, Oxy Petro, Oxy USA, and Texas Brine appeal. UBS answered the appeals filed by all but Texas Brine.

Another panel of this court recently decided a nearly identical appeal in **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-1249 (La. App. 1st Cir. 12/30/20), --- So.3d ---. Although that case involved a different plaintiff, the same April 2018 liability judgment, evidence, assignments of error, and factual and legal considerations at issue here were at issue in **Pontchartrain**. This court thoroughly discussed the procedural history of the case and the evidence presented at trial and analyzed the applicable legal principles – all of which we adopt by reference. **Pontchartrain**, 2018-1249, pp. 5-66, --- So.3d ---. The **Pontchartrain** court affirmed the district court's conclusion that the sinkhole was caused by a combination of the closeness of the cavern to the edge of the salt dome, which resulted in an unreasonably thin cavern wall and eventual brine leak, and the plugging and abandoning of the OG3. **Pontchartrain**, 2018-1249, p. 48, --- So.3d ---. However, this court concluded that the district court manifestly erred by finding that the presence of the AH-1 reservoir was a cause-in-fact of the collapse of the OG3 cavern. **Pontchartrain**, 2018-1249, pp. 45-46, --- So.3d ---. Finally, this court determined that the milling procedure and pressurization of the OG3 in 2010, performed in anticipation of a mechanical integrity test (MIT), exacerbated any damage or leak already present within the cavern. **Pontchartrain**, 2018-1249, pp. 48, 61-64, --- So.3d ---.

The only basis to allocate fault to Oxy Petro and Oxy USA was their relationship to the AH-1 well and reservoir. Similarly, a portion of fault allocated to Oxy also stemmed from the AH-1. Upon finding the AH-1 reservoir was not a causative factor, the **Pontchartrain** court concluded that Oxy Petro and Oxy USA were not liable and that Oxy's percentage of fault should be reduced. **Pontchartrain**, 2018-1249, pp. 65-66, --- So.3d ---.

In-depth consideration was then given to the remaining parties' duties and their relationships with each other and the OG3, all of which we adopt by reference. After doing so, this court affirmed the district court's remaining duty/breach determinations but also concluded that the district court manifestly erred to the extent it failed to find that Texas Brine breached its duty to act as a prudent operator when it milled and pressurized the OG3. **Pontchartrain**, 2018-1249, pp. 64, 66-72, --- So.3d ---. This court then reversed and amended the April 2018 judgment to reallocate fault, reducing Oxy's fault to 30% and increasing Texas Brine's fault to 45%. The district court's allocation of 15% of fault to Legacy Vulcan was affirmed. **Pontchartrain**, 2018-1249, pp. 71-72, --- So.3d ---. Finally, because UBS's answer, wherein it sought a modification of the judgment, was untimely, the judgment against it was affirmed without discussion of the merits of the arguments raised in the answer. **Pontchartrain**, 2018-1249, pp. 33, 65, --- So.3d ---.

After a thorough review of the record before us, we find only one distinction between this appeal and the **Pontchartrain** appeal. Here, UBS timely filed an answer in response to the appeals filed by Legacy Vulcan and the three Oxy entities, seeking a modification of the judgment. Therefore, we must determine whether the district court manifestly erred by assigning any fault to UBS, as it maintains. See **Graffia v. Louisiana Farm Bureau Casualty Ins. Co.**, 2008-1480 (La. App. 1st Cir. 2/13/09), 6 So.3d 270, 274-75 (The trier of fact is vested with much discretion in its allocation of fault; therefore, an appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous.)

Before we expressly consider UBS's arguments, we adopt the **Pontchartrain** court's factual findings, legal conclusions, and holdings concerning arbitration, causation, duty, and breach as to Legacy Vulcan, Oxy, Oxy Petro, Oxy USA, and Texas Brine. **Pontchartrain**, 2018-1249, pp. 5-72, --- So.3d ---. See

7

**Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-0001 (La. App. 1st Cir. 6/4/18), 253 So.3d 156, 156, writ denied, 2018-1124 (La. 9/28/18), 253 So.3d 147 (recognizing that, where a subsequent appeal involves the same background, issues, and assignments of error that have already been thoroughly discussed by this court, we are bound by the "law of the circuit doctrine" to follow the prior opinion.)

## EXCEPTION OF RES JUDICATA

In response to UBS's answer, Oxy, Oxy Petro, and Oxy USA filed an exception of res judicata in this court, arguing that the determination that UBS's answer was untimely in **Pontchartrain**, 2018-1249, pp. 33, 65, --- So.3d ---, is conclusive and bars consideration of UBS's arguments raised in its timely answer filed in this appeal. We disagree and deny the exception.

An essential requirement to the application of res judicata is a "final judgment." See La. R.S. 13:4231. This court has previously noted in the sinkhole litigation that a judgment from this court is not final and definitive until the supreme court denies any possible application for certiorari or the delays run for applying for certiorari and/or rehearing. A final judgment from which there can be no appeal acquires the authority of a thing adjudged. See La. Code Civ. P. art. 2166(C), (D), and (E); **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-0360 (La. App. 1st Cir. 7/3/19), 280 So.3d 661, 663; and **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-0004 (La. App. 1st Cir. 6/6/18), 255 So.3d 644, 648, writ denied, 2018-1431 (La. 12/3/18), 257 So.3d 1259. Once a final judgment acquires the authority of a thing adjudged, no court has jurisdiction to change the judgment, regardless of the magnitude of any final judgment's error. **Tolis v. Board of Supervisors of Louisiana State University**, 95-1529 (La. 10/16/95), 660 So.2d 1206, 1206-07 (per curiam).

8

As of the date of this opinion, Texas Brine, UBS, and Legacy Vulcan have filed writs with the supreme court, seeking review and reversal of various aspects of the **Pontchartrain**, 2018-1249, --- So.3d ---, opinion.  The supreme court has not acted on these writs; therefore, the delays set forth in La. Code Civ. P. art. 2166(E) have not yet expired.  Consequently, the **Pontchartrain**, 2018-1249, --- So.3d ---, judgment has not acquired the authority of a thing adjudged and cannot support a claim of res judicata.[3]  The exception is denied.

## UBS'S ANSWER

UBS maintains that it should not be cast with any fault for causing the sinkhole because it was not involved in the day-to-day operations or mining of the OG3 and was only involved in "special projects" concerning the well.  According to UBS, its involvement with the three causative factors identified by the district court was "either extremely limited or non-existent."

As an initial matter, we note that the distinction between Texas Brine and UBS is often blurred.  When witnesses testified at trial, they frequently referred to Texas Brine and UBS interchangeably, making it abundantly clear that these entities worked closely in connection with the OG3.  Similarly, the parties and the district court commonly referred to both entities as "Texas Brine."  For instance, in its written reasons, the district court referred to Texas Brine and UBS collectively as "Texas Brine," making no distinction between them.  However, the trial testimony established that UBS is a wholly owned subsidiary of Texas Brine.  UBS was created in 2001 to provide technical and engineering services to Texas Brine's customers.  As a separate legal entity, independent from Texas Brine, UBS must be treated as such for purposes of this appeal.[4]  See **Bujol v. Entergy Services,**

---

[3] We note that the lone request for rehearing filed in **Pontchartrain**, 2018-1249, --- So.3d ---, was denied on February 10, 2021.

[4] Florida Gas, Legacy Vulcan, and Oxy alternatively alleged that UBS is liable with Texas Brine under the single business enterprise theory.  Although it appears this issue has not yet been resolved, whether the single business enterprise theory applies to Texas Brine and UBS is not before us in this appeal.

**Inc.**, 2003-0492 (La. 5/25/04), 922 So.2d 1113, 1127. Mindful of this requirement, we conclude that a combination of findings made in **Pontchartrain**, 2018-1249, --- So.3d ---, which we adopt as our own, as well as evidence in the record before us, support the district court's finding of liability against UBS and its allocation of fault to Texas Brine's subsidiary.

As found in **Pontchartrain**, Texas Brine, as operator, had the duty to operate the OG3 in a prudent manner. It breached this duty in several ways, including by milling and pressurizing the OG3, then plugging and abandoning the well rather than continuing to monitor. **Pontchartrain**, 2018-1249, pp. 62-64, --- So.3d ---. As to the milling, pressurization, and plugging/abandonment of the OG3, the record establishes that UBS worked alongside Texas Brine and assumed a "hands-on" role in each of these endeavors. Although UBS was not the operator of the OG3, it nonetheless had a duty to act in a reasonable and prudent manner. It is the basic policy of our law that every act whatever of a man that causes damage to another obliges him by whose fault it happened to repair it. La. Civ. Code art. 2315. See also La. Civ. Code art. 2316, "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

**Milling and Pressurization of the OG3:**

In 2008, Texas Brine suggested that a vertical seismic profile be run on the OG3 to determine the shape of the cavern. Shortly thereafter, Texas Brine erroneously advised Oxy that, before this could be done, a milling procedure was needed. **Pontchartrain**, 2018-1249, p. 22, --- So.3d ---. The milling was performed in 2010, followed by the vertical seismic profile, then a pressure test (preMIT) in anticipation of performing the MIT. The OG3 failed to hold pressure during the preMIT, which conclusively established the existence of a leak in the OG3. Consequently, the MIT was never performed. As found in **Pontchartrain**, and adopted herein, the milling procedure and pressurization of the OG3 added

10

stress to the cavern and exacerbated the leak. **Pontchartrain**, 2018-1249, pp. 24-25, 61-64, --- So.3d ---.

The evidence demonstrates that UBS was involved in these procedures, start to finish. James Tichenor, UBS's president from 2001 until early 2010, communicated with Oxy concerning his recommendations and the timing of the vertical seismic profile and the milling operation. Mark Cartwright, UBS's president effective September 2010, confirmed that UBS developed the milling procedure. Jeffrey McCartney, UBS's manager of wells, likewise confirmed that he was involved in planning and designing the milling procedure. The documents reveal that UBS's manager of wells played an integral role in securing permit approval for the project from the Louisiana Department of Natural Resources (LDNR), providing diagrams and details for the proposed work.

As the well operator, Texas Brine maintained overarching authority and control over the OG3. **Pontchartrain**, 2018-1249, pp. 54-55, 63-64, --- So.3d ---. However, UBS's Dave Dickehut was the manager or field supervisor on the project. Mr. Cartwright testified, "[W]e certainly wanted to have a single source of direction, and Houston and UBS is [sic] where the professional staff was to guide the work." On September 28, 2010, Mr. Dickehut advised UBS's Cartwright and McCartney of problems occurring during the milling procedure. Upon learning of the issues, Mr. Cartwright noted, "Sure seems connected to the surrounding rock." He further cautioned, "we could see one hell of a mess one day." Like Texas Brine, UBS did not convey these concerns to Oxy; although, the record shows that UBS frequently communicated with Oxy in the aftermath of the failed preMIT. **Pontchartrain**, 2018-1249, p. 26, --- So.3d ---.

**Plugging and Abandonment of OG3:**

Two causation experts who testified at trial opined that plugging and abandoning the OG3 was "the worst possible thing to do." **Pontchartrain**, 2018-1249, p. 64, --- So.3d ---. It was the "proverbial nail in the coffin in causing the

11

sinkhole" because plugging and abandoning the OG3 "took away any mode of monitoring pressure within the cavern or rectifying any issues therewith, such as extreme pressure loss." **Pontchartrain**, 2018-1249, pp. 47-48, --- So.3d ---. The **Pontchartrain** court expressly found that, in addition to Texas Brine, UBS "was also intricately involved in the plugging and abandoning of the OG3 cavern, with UBS making the determination that it was no longer beneficial to monitor the cavern and drafting the proposal of the plugging and abandoning to submit to the LDNR." **Pontchartrain**, 2018-1249, p. 70, --- So.3d ---. At the time, Texas Brine and UBS determined that the integrity of the well's casing could not be established and that monitoring the pressure of the well would have been useless. **Pontchartrain**, 2018-1249, pp. 27, 64, --- So.3d ---. The court further concluded, "It is clear that prior to plugging and abandoning Texas Brine was sufficiently aware of a cavern leak within the OG3 as evidenced by the testimony of Bruce Martin, the president of UBS, who stated Mr. Cartwright, then president of UBS, informed him of this leak." **Pontchartrain**, 2018-1249, pp. 28-29, --- So.3d ---. These findings, which we adopt as our own, are well-founded and supported by the record before us.[5]

Additionally, the record confirms that, after the failed preMIT, UBS maintained in-person and written communication with LDNR concerning the status of the OG3, initial monitoring options, and, ultimately, the plan to plug and abandon the OG3. UBS's Cartwright and McCartney confirmed that UBS designed and implemented the plugging and abandonment procedure.

It is evident that UBS's involvement with the OG3 can hardly be characterized as "extremely limited." We find UBS's attempt to entirely extricate

---

[5] On June 16, 2011, John Sergo, then vice president of UBS, prepared a company email that included an update of UBS's entire works. Under the "Well Work" section, the update noted "[t]he plugging and abandoning of OG #3 is complete. May the well rest in peace and not create Lake McCartney." Mr. Sergo admitted that, based on the language used, it could be inferred that UBS contemplated the appearance of a sinkhole. **Pontchartrain**, 2018-1249, p. 29, --- So.3d ---.

itself from the events that caused the sinkhole to be disingenuous and wholly without merit. We find no manifest error in the district court's judgment allocating 10% of fault for causing the sinkhole to UBS. This portion of the April 18, 2018 judgment is affirmed.

### FAULT ALLOCATION TO REMAINING PARTIES

Considering the identical nature of the remaining issues presented in this appeal and those considered in **Pontchartrain**, we adopt the liability determinations and fault allocations set forth therein as they relate to Texas Brine, Legacy Vulcan, Oxy, Oxy Petro, and Oxy USA.[6] **Pontchartrain**, 2018-1249, pp. 65-71, --- So.3d ---. Therefore, we find the district court was manifestly erroneous in its fault allocation to Oxy, Oxy Petro, Oxy USA, and Texas Brine. We reallocate fault such that Oxy shall bear 30% of fault, Texas Brine shall bear 45% of fault, and Oxy USA and Oxy Petro shall bear no fault. Finally, we find no error in the district court's allocation of 15% of fault to Legacy Vulcan.

We further dispose of all pending motions[7] and exceptions filed with this court by adopting the rulings made in **Pontchartrain**, 2018-1249, --- So.3d ---, as the motions and exceptions filed in this appeal are materially indistinguishable from those considered in **Pontchartrain**, 2018-1249, --- So.3d ---.[8]

---

[6] We likewise adopt the **Pontchartrain** court's conclusion that the district court was not manifestly erroneous in declining to allocate fault to Dr. Joseph Ratigan, a geological engineer who frequently provided opinions and analysis concerning the OG3. **Pontchartrain**, 2018-1249, p. 71, n. 34, --- So.3d ---.

[7] Texas Brine's February 12, 2021 and March 22, 2021 motions to strike the letters filed by the three Oxy entities pursuant to Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.6.1, are denied as moot.

[8] Specifically, we adopt the dispositions set forth in **Pontchartrain**, 2018-1249, --- So.3d ---, denying the following:
    (1) Texas Brine and UBS's motion to stay. **Id.** at p. 5, n. 2.
    (2) Texas Brine's motion for limited remand or stay of this appeal considering the district court's per curiam in **Crosstex**, 34,202. **Id.**
    (3) Oxy, Oxy Petro, Oxy USA, and Legacy Vulcan's motion to consolidate the three liability appeals appearing in docket numbers 2018 CA 1249, 2018 CA 1391, and 2018 CA 1425. **Id.** at p. 6, n. 3.
    (4) Oxy, Oxy Petro, and Oxy USA's motion to consolidate the Phase1 liability appeals. **Id.**
    (5) Texas Brine's exception of lack of appellate jurisdiction or, alternatively, motion to strike arbitrability from the Phase 1 liability appeal. **Id.** at p. 38, n. 28.
    (6) Texas Brine's peremptory exception of res judicata regarding the non-arbitrability of tort claims. **Id.**

## CONCLUSION

For the reasons fully set forth in this opinion and in **Pontchartrain**, 2018-1249, --- So.3d ---, the district court's April 18, 2018 judgment is reversed in part, amended in part, and affirmed in part. That portion of the judgment allocating 40% of fault to Occidental Chemical Corporation is reversed. That portion of the judgment allocating 5% of fault to Occidental Petroleum Corporation is reversed. That portion of the judgment allocating 5% of fault to Oxy USA Inc. is reversed.

We amend that portion of the judgment that allocated 40% of fault to Occidental Chemical Corporation to reflect the allocation of 30% of fault to Occidental Chemical Corporation. We further amend that portion of the judgment that allocated 25% of fault to Texas Brine Company, LLC to reflect the allocation of 45% of fault to Texas Brine Company, LLC.

We affirm the remainder of the district court's judgment, allocating 15% of fault to Legacy Vulcan, LLC f/k/a Legacy Vulcan Corp. and/or Vulcan Materials Company and 10% of fault to United Brine Services Company, LLC. We deny the exception of res judicata filed by Occidental Chemical Corporation, Occidental Petroleum Corporation, and Oxy USA Inc. and deny the relief sought in United Brine Services Company, LLC's answer to the appeals.

This memorandum opinion is issued in accordance with Uniform Rules of Louisiana Courts of Appeal, Rule 2-16.1(B). Each party shall bear its own costs on appeal.

**REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART. ANSWER TO APPEAL DENIED. EXCEPTION OF RES JUDICATA DENIED.**

---

(7) Texas Brine's motion to strike Oxy's response to per curiam. **Id.**

(8) Oxy's motion for summary disposition. **Id.** at p. 39, n. 29.

(9) Texas Brine's motion to stay Phase 1 appeal considering supplemental production of documents by Legacy Vulcan. **Id.**

(10) Texas Brine's motion for limited remand regarding reallocation of fault due to newly produced documents by Legacy Vulcan. **Id.**

We likewise adopt the disposition in **Pontchartrain,** 2018-1249, p. 72, n. 35, --- So.3d ---, granting Oxy's motion to supplement illustrations for its original brief.